**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DAWN CREWL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | )   **2:10-cv-00567** |
| **v** | ) |
| | ) |
| **PORT AUTHORITY OF ALLEGHENY** | ) |
| **COUNTY, WILLIAM STEINMETZ, an** | ) |
| **individual, and ERIC WELLS, an individual,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

(Doc. No. 44), filed with brief in support (Doc. No. 47).  Defendant has also filed an appendix

and a separate statement of material facts in support of its motion for summary judgment (Doc.

Nos. 45 and 46) pursuant to Fed.R.Civ.P. 56 and Local Rule 56.1.  Plaintiff filed a response in

opposition and a brief in support of that response.  Doc. Nos. 48 & 49.  Plaintiff also filed her

own concise statement of material facts with attached exhibits in support of her response.  Doc.

No. 50.  On August 8, 2011, Defendant filed a reply brief in support of its motion for summary

judgment.  Doc. No. 51.  The issues have been thoroughly briefed and Defendant's motion for

summary judgment is ripe for disposition.  For the following reasons, Defendant's motion for

summary judgment will be granted.

### Statement of the Case

**A.     Procedural History**

On May 5, 2010, Plaintiff, Dawn Crewl, initiated this case with the filing of her original

complaint, which contained a total of five counts: two counts alleging violations of Title VII, one

count alleging a violation of the Family Medical Leave Act of 2003, 29 U.S.C. § 2601, *et seq.*, (hereinafter "FMLA"), and two counts of intentional infliction of emotional distress.  Doc. No. 1. The complaint named the Port Authority of Allegheny County ("Port Authority"), and two Port Authority employees, William Steinmetz, and Eric Wells, as Defendants.  *Id.*  In response, Defendants moved to dismiss the Title VII allegations at counts I and II and the intentional infliction of emotional distress allegations at counts IV and V (Doc. No. 12), and answered the complaint with respect to count III (Doc. No. 14).  On August 30, 2010, Plaintiff filed an amended complaint that alleged one claim under the FMLA for the allegedly wrongful termination of her employment by Defendant Port Authority, and one state law claim for the intentional infliction of emotional distress against Defendants Steinmetz and Wells.  Doc. No. 18.  Defendants moved to dismiss the state law claim at count II for a failure to state a claim upon which relief could be granted.  Doc. No. 22.  On October 20, 2010, this Court dismissed count II of the amended complaint for the lack of jurisdiction.  Doc. No. 27.  Whereas count II of the amended complaint was the only count directed against Defendants Steinmetz and Wells, both individually named Defendants have been dismissed from this action.  Defendant Port Authority answered the amended complaint (Doc. No. 24) with a denial of any violation of the FMLA, and a period of discovery followed.  Upon completion of the period of discovery, Defendant Port Authority filed its motion for summary judgment.

**B.    Factual Background**

The facts as recounted here are taken from Plaintiff's amended complaint (Doc. No. 18), Defendant's Statement of Material facts (Doc. No. 46), the appendix to Defendant's motion for summary judgment (Doc. No. 45), Plaintiff's Statement of Material Facts with attached exhibits

(Doc. No. 50). The facts and all reasonable inferences are viewed in a light most favorable to Plaintiff, the non-moving party.

### 1. Plaintiff's employment background with Defendant and outside employer

Plaintiff began her employment with Defendant as a bus operator in 1998, and during the period of her employment, she was based primarily in the Collier Garage. Doc. No. 46, Defendant's Statement of Material Facts ("Def. Stmt. of Mat. Facts"), at ¶¶ 1 & 2; *see also*, Doc. No. 50, Plaintiff's Stmt. of Mat. Facts, at ¶¶1 & 2. During the operative period of time relevant to her claims, Plaintiff also worked part-time as a bartender at an establishment known as Rocky's Bar, where she would work on Tuesdays and Friday evenings after finishing her shift with the Port Authority. Def. Stmt. of Mat. Facts at ¶¶ 10 & 11; *see also*, Pltf. Stmt. of Mat. Facts at ¶¶ 4 & 5. Plaintiff's employer at Rocky's Bar was flexible in terms of the time he expected her to begin her shift. Pltf. Stmt. of Mat. Facts at ¶ 6. Plaintiff was not expected to begin her bartending shift at any specific time, only that she report to work after her shift ended with the Port Authority. *Id*. at ¶¶ 5 & 6. As such, the schedule under which Plaintiff worked at Rocky's Bar did not conflict with her schedule with Defendant. *Id*. at ¶ 7.

Plaintiff was a member of Local 85, Amalgamated Transit Union ("ATU") and was employed pursuant to a collective bargaining agreement ("CBA") between Defendant Port Authority and the ATU. Def. Stmt. of Mat. Facts at ¶ 3; *see also* Pltf. Stmt. of Mat. Facts at ¶ 9. In accordance with the CBA, Plaintiff's bus route was determined pursuant to a "pick" process that was conducted four times a year and followed a sequence based upon seniority. *Id*. at ¶ 6; *see also* Pltf. Stmt. of Mat. Facts at ¶ 10. The pick process permitted employees to choose their schedules for the three month period that followed, and was a turn-based process, with the

3

sequence of who got to select first being based upon seniority as defined under the terms of the CBA. *Id.* at ¶ 7. As a result of her relatively low seniority under the CBA, Plaintiff's "pick" would typically require her to work a swing shift, which meant that she would work a shift in the morning, not work for several hours during the middle of the day, and work for several hours in the afternoon/evening. *Id.* at ¶ 8; *see also*, Pltf. Stmt. of Mat. Facts at ¶ 11. Additionally, as the result of her lack of seniority, Plaintiff would typically be required to work a schedule that included work shifts falling on holidays that happened to occur during the period. *Id.* at ¶ 9.

## 2. Port Authority's procedures and policies

As part of its FMLA program, Port Authority promulgated a policy entitled "FMLA Policies and Procedures", a policy that was in effect throughout Plaintiff's employment. Def. Stmt. of Mat. Facts at ¶14. The policy was revised in January 2004, with the revised version in effect through the time up to and including the date of Plaintiff's discharge in October 2008. *Id.* at ¶ 16; *see also*, Pltf. Stmt. of Mat. Facts at ¶ 19. Port Authority's FMLA policy prohibits fraudulent use of FMLA leave, and specifically states that "An employee who fraudulently obtains FMLA leave is not protected from disciplinary action, including immediate termination of employment and all FMLA rights." *Id.* at ¶ 22; *see also* Pltf. Stat. of Mat. Facts at ¶ 22.

Pursuant to Port Authority's FMLA policy, employees who desire to request FMLA leave are provided with a standard packet that contains various documents to be completed by either the employee or her health care provider. *Id.* at ¶ 17; *see also*, Pltf. Stmt. of Mat. Fact at ¶ 25. The FMLA packet contains a one page FMLA request form on which the employee sets forth information pertaining to her requested leave, information such as whether the leave is to be intermittent or continuous, or whether it is for the employee's own serious health condition, as

4

opposed to that of a family member. *Id*. at ¶ 18; *see also*, Pltf. Stmt. of Mat. Facts at ¶ 26. In addition, the packet contains a certification form to be completed by the employee's health care provider that seeks information regarding the employee's serious health condition, her treatment for such condition, and the expected duration and frequency of absences from work the health care provider anticipates. *Id*. at ¶ 19; *see also* Pltf. Stmt. of Mat. Facts at ¶ 27.

Terry Schneider, the Port Authority FMLA/Attendance Administrator, is responsible for administering the FMLA program, and performs duties such as processing employees' applications for FMLA leave, training managers, tracking employees' FMLA usage, and monitoring employees' FMLA use for possible abuse and/or fraud. Def. Stmt. of Mat. Facts at ¶ 13 – 14; *see also* Pltf. Stmt. of Mat. Facts at ¶ 20. Once an employee has submitted a completed FMLA packet, it is Ms. Schneider who either approves or denies the request. *Id*. at ¶ 20; *see also* Pltf. Stmt. of Mat. Facts at ¶ 28.

Port Authority maintains a Performance Code that, *inter alia*, provides work rules and identifies various work rule violations that will result on discipline. Def. Stmt. of Mat. Facts at ¶¶ 4 - 5; *see also*, Pltf. Stmt. of Mat. Facts at ¶ 14. Included within the Performance Code are General Rule Violations, violations of which may be grounds for disciplinary action, and Major Rule Violations, violations of which may be sufficient cause for the immediate discharge of an employee. Doc. No. 45-2, Appendix, at Depo. Tr. of Pltf. at Depo. Exhibit 3; *see also*, Def. Stmt. of Mat. Facts at ¶83. Included among the Major Rule Violations is the rule that "Fraudulent behavior with regard to payment and/or receipt of wages, salaries, benefits, or workers' compensation payments." *Id*.; *see also* Pltf. Stmt. of Mat. Facts at ¶ 15. While she was employed by Defendant, Plaintiff was aware of her obligations as an employee requesting leave

under the FMLA policy, and further, that the policy prohibited the fraudulent use of FMLA leave. Def. Stmt. of Mat. Facts at ¶ 21, 23 – 24.

### 3.    Plaintiff's use of FMLA leave

Beginning as early as 2002, Plaintiff consistently requested and was approved for intermittent FMLA leave.  Deft. Stmt. of Mat. Facts at ¶ 25; *see also* Pltf. Stmt. of Mat. Facts at ¶ 30.  While Plaintiff originally requested FMLA leave in 2002 to care for her son, beginning in 2003, she began requesting intermittent leave for migraine headaches.  *Id*. at FN 5.  For 2003, and for every twelve month period thereafter up to and through the date of Plaintiff's discharge, Defendant granted Plaintiff's request for intermittent FMLA leave for migraine headaches.  *Id*. at 30; Pltf. Stmt. of Mat. Facts at ¶ 36.  Beginning in 2006, Plaintiff began requesting intermittent FMLA leave for additional conditions related to depression, anxiety, and panic attacks (hereinafter collectively referred to as "anxiety conditions").  *Id*. at 31; Pltf. Stmt. of Mat. Facts at ¶ 37.  As such, Plaintiff was approved for FMLA intermittent leave on two separate bases, one for migraines and one for her anxiety conditions.  *Id*. at ¶ 32; Pltf. Stmt. of Mat. Facts at ¶ 38.  In March 2008, Plaintiff was approved for intermittent FMLA leave for both migraine headaches and anxiety for the period of March 28, 2008 through March 27, 2009.  Def. Stmt. of Mat. Facts at ¶ 33.

In terms her migraine headaches, Plaintiff testified that she does not know in advance when the headaches would occur, and that they could occur suddenly.  Def. Stmt. of Mat. Facts at ¶¶ 34;  Pltf. Stmt. of Mat. Facts at ¶ 39.  Plaintiff would suffer, on average, approximately two headaches a month, and was treated for her migraines by Lawrence Zelonis, D.O.  *Id*. at ¶ 35 & 36;  Pltf. Stmt. of Mat. Fact at ¶ 39.  In terms of her anxiety conditions, Plaintiff suffered from

attacks approximately three to four times a week, and that such attacks also occurred suddenly. *Id*. at ¶¶ 37 - 38; Pltf. Stmt. of Mat. Facts at ¶¶ 40 – 41.   Plaintiff was being treated by Christine P. Harenski, LCSW, for her anxiety conditions.   Doc. No. 45-2, Dep. Tr. of Terry Schneider at Dep. Ex. 12.   On some occasions during which Plaintiff would suffer from either a migraine headache or a panic attack, Plaintiff would not report to work for either the morning shift or the afternoon shift, while on other occasions, she would work the morning shift, then not work the afternoon/evening shift.

### 4.   Plaintiff arranges to visit her brother in Las Vegas in early July

On May 8, 2008, Plaintiff requested and was granted two vacation days for June 30, 2008 and July 1, 2008.   Deft. Stmt. of Mat. Facts at ¶ 62.   On May 9, 2008, Plaintiff requested and was granted a personal day for July 2, 2008.   *Id*. at 63.   As a result of her "pick", Plaintiff was scheduled to work on both July 3, and the holiday of July 4.   *Id*. at ¶ 64; Pltf. Stmt. of Mat. Facts at ¶ 55.   Prior to departing on her trip, Plaintiff attempted to trade her shift for the 4th of July with other employees, but was unsuccessful.   *Id*. at ¶ 66.   Also, Plaintiff had been planning all along to stay in Las Vegas until July 5, 2008.   Pltf. Stmt. of Mat. Facts at ¶ 50 & n. 4.

### 5.   Port Authority's concerns over Plaintiff's use of FMLA leave

#### a.   <u>Pattern of FMLA leave on Fridays and holidays</u>

As early as 2004, Port Authority became suspicious that Plaintiff was fraudulently using her intermittent leave given the emergence of a pattern of absences on Fridays and holidays.   Def. Stmt. of Mat. Facts at ¶ 41.   Port Authority was suspicious that despite either not working at all on Fridays, or working only the earlier shift, Plaintiff would nevertheless work as a bartender later that evening at Rocky's Bar.   Deft. Stmt. of Mat. Facts at ¶ 49.   For her part, Plaintiff admits

that she would work at Rocky's Bar on such occasions "if I felt better when it was time to go."

Doc. No. 45-1, Depo. Tr. of Pltf. at Tr. p. 61.  In light of these suspicions, Port Authority

requested that Plaintiff recertify her need for FMLA leave.  *Id.* at ¶ 42.  At the same time,

however, Defendant continuously granted Plaintiff's requests for FMLA leave.  Def. Stmt. of

Mat. Facts at ¶ 45; Pltf. Stmt. of Mat. Facts at ¶ 35.

     As part of Plaintiff's recertification process, Defendant required Plaintiff to receive a

second opinion.  Def. Stmt. of Mat. Facts at ¶ 46.  The second opinion report regarding Plaintiff's

anxiety conditions was received by Port Authority on June 3, 2008, and noted in relevant part:

> Based on this examination, her psychiatric diagnosis is Adjustment Disorder with
> Anxiety and a Depressed Mood.  Her adjustment disorder is prolonged, and its
> symptoms continue to be a focus of her attention.  It is appropriately treated with
> psychotherapy and psychotropic medication.  Ms. Crewl is thereby able to control her
> symptoms, and she knows how to use medication to stave off any impending panic
> attack.  In my opinion, her health condition is no longer serious in the sense of
> incapacitating, but it does require periodic visits to a healthcare provider.  With those
> visits, she functions in the normal range, and she has subjective complaints
> unsupported by objective findings. … The psychiatric interview, mental status
> examination, and MMPI-2 indicate that she can function adequately, does not suffer
> from a serious health condition, and can adapt to normal circumstances without
> extensive use of medical leave.

Doc. No. 45-2, Pltf. Dep. Ex. No. 12.  In addition, the second opinion evaluation report

conducted by a neurologist regarding Plaintiff's migraine headaches dated May 23, 2008, was

somewhat consistent with Port Authority's suspicions in that it noted that it is "somewhat

uncommon that [Plaintiff] has missed work twenty-six of the past fifty-two Fridays.  Migraine is

not usually a Friday event.  It generally occurs sporadically."  Doc. No. 45-2, Pltf. Dep. Ex. 14.

The neurologist ultimately concluded that Plaintiff had failed to seek appropriate care for the

treatment of her migraine headaches, based the fact that Plaintiff had never seen a neurologist for

her headaches, she had never received or attempted preventative care, and that she only

occasionally uses medication for her headaches.  *Id.*

      b.    <u>More frequent use of FMLA leave than previously indicated was necessary</u>

      Following a sharp increase in the frequency in which her FMLA leave was being used,

Plaintiff was once again asked to recertify both of her approved FMLA medical conditions.  *Id.* at

¶ 53; Pltf. Stmt. of Mat. Facts at ¶ 46.  More specifically, Plaintiff received two letters, each

dated June 16, 2008, informing her of the recertification requirements, one letter corresponding

to her migraine headaches and one to her anxiety conditions.  Doc. No. 45-2, Depo. Tr. of Pltf at

Dep. Ex. 18 & 19.  The letters provided the following justification for the request, noting that

since May 1, 2008, Plaintiff had been off work much more frequently than was indicated

necessary by either treating health care provider, Dr. Lawrence Zelonis or Christine Harenski.

*Id.*; *see also*, Def. Stmt. of Mat. Facts at ¶54 & 55.  Attached to each of the letters was a

certification form to be completed by Plaintiff's health care providers.  *Id.*  Among the

information requested, the form noted "Since May 1, 2008, the patient has called off work on the

following dates:  5/5; 5/7; 5/8; 5/9; 5/16; 5/26; 6/11; 6/12; and 6/13.  She's also worked and then

became ill on the following dates:  5/12; 5/13; 5/14; 5/15; 5/19; 5/20; 5/21; 5/22; 5/23; 5/27; 6/2;

6/3; 6/4; 6/5; 6/6; 6/9; and 6/10.  Are [sic] the frequency of absences consistent with this health

condition?"  Doc. No. 45-2, Depo. Tr. of Pltf. at Dep. Exs. 23 & Depo. Tr. of Terry Schneider at

Dep. Ex. P-12.  The letters instructed Plaintiff to return the completed forms with the requested

information no later than July 1, 2008.  Doc. No. 45-2, Depo. Tr. of Pltf at Depo. Exs. 18 & 19.

      Plaintiff ultimately completed both forms and returned them to Terry Schneider, albeit

one was returned after the deadline.  *See* Doc. No. 45-2, Depo. Tr. of Pltf at Dep. Ex. 24 & Depo.

Tr. of Terry Schneider at Dep. Ex. P-12.  Dr. Zelonis completed the certification form on June

25, 2008, indicating that the aforementioned frequency of absences was consistent with her migraine headaches.  *Id*. at Pltf. Depo. Ex. 24.  On June 27, 2008, Port Authority affirmed its previous provisional approval of her intermittent FMLA leave for the period of March 28, 2008 through March 27, 2009, based upon the certification of Dr. Zelonis.  *Id*. at Pltf. Depo. Ex. 23; Def. Stmt. of Mat Facts at ¶ 56.  On June 23, 2008, Plaintiff requested an extension of time to provide the recertification documentation form Christine Harenski due to the fact that Harenski was on vacation.  Def. Stmt. of Mat. Facts at ¶ 57; Pltf. Stmt. of Mat. Facts at ¶ 49.  The request was granted by Schneider, and Plaintiff was given until July 10, 2008, to return the documentation.  *Id*. at ¶ 58; Pltf. Stmt. of Mat. Facts ¶ 49.

### 6.   Plaintiff visits brother in Las Vegas from June 28 – July 5

On June 28, 2008, Plaintiff departed Pittsburgh for Las Vegas.  Given Port Authority's suspicions regarding Plaintiff's FMLA usage, a private investigator was hired to conduct surveillance of Plaintiff.  Deft. Stmt. of Mat. Facts at ¶ 69.  On June 27, 2008, the private investigator observed Plaintiff working at Rocky's Bar, talking freely with bar patrons about leaving for a trip to Las Vegas the next day and holding a "Vegas Fund" tip jar.  *Id*. at ¶ 70.  Surveillance subsequently confirmed that Plaintiff departed from Pittsburgh International Airport on June 28, 2008, and returned on July 5, 2008.  *Id*. at 71.  While on vacation in Las Vegas, on July 2, 2008, Plaintiff called the Collier Garage and informed the dispatcher that she would be absent on July 3rd and 4th and attributed those absences to "FMLA".  *Id.* at ¶ 73.

In cases in which an employee was required to work on a holiday, the CBA provided that the employee would receive holiday pay.  Pltf. Stmt. of Mat. Facts at ¶ 13.  Section 205 of the CBA addresses pay for Port Authority employees over holidays.  In relevant part, it notes:

HOLIDAYS WITH PAY

A.   Christmas Day, New Year's Day, Dr. Martin Luther King Jr.'s Birthday, Presidents' day, good Friday, Memorial Day, Fourth of July, Labor Day, Veterans day and Thanksgiving Day, or the days on which they are observed, are guaranteed paid holidays for all employees covered by this Agreement; that is, they are paid holidays whether they fall on the employee's regularly scheduled work day or regularly scheduled day off.  Every employee shall be entitled to receive eight (8) hours pay at his/her regular rate of pay for each such day provided, however, that such employee must have worked the day before, the day after and the day observed as the holiday, each if a regularly scheduled workday, unless absence is excused for just cause, which includes, but is not limited to, illness or injury. …

B.   An employee who works on a holiday which falls on a regularly scheduled workday shall be paid, in addition to holiday pay of eight (8) hours as described above, at straight time for all regularly scheduled hours of work up to eight (8) (including report time, allowed time, etc.) …

Doc. No. 45-3, Appendix Tab 2, CBA excerpt.  Because she was scheduled to work on the 3rd

and 4th of July as regular workdays, and because she invoked FMLA leave for both of those days,

Plaintiff received the special holiday pay for those days.  Deft. Stmt. of Mat. Facts at ¶ 79.

Plaintiff would not have received holiday pay if she did not use "FMLA time" to cover those

absences, or if she had been successful in trading that shift with another employee.  *Id*. at ¶¶ 81 &

82.

**7.      Plaintiff's continuous FMLA leave and subsequent discharge**

At some point, the prospect of potentially changing job duties was initiated by Plaintiff,

although the record is somewhat incomplete in this regard.  According to Plaintiff, she discussed

her desire to be reassigned to a position of "sedentary duty" with a number of Port Authority

employees.  Pltf. Stmt. of Mat. Facts at ¶ 48.  Specifically, Plaintiff testified that at some point in

her conversation with Terry Schneider on June 23, 2008 (the same conversation in which she

requested an extension of time in order to return the recertification documentation), she

mentioned something to the effect that her "doctor feels that [she] needs to be going off work

soon", which Plaintiff understood to mean moving into a position of sedentary duty.  Doc. No. 45-2, Dep. Tr. of Pltf. at Tr p. 131.  Plaintiff also testified that she discussed her request for sedentary duty with Monica Simonson, an assistant manager who worked at the Collier Garage, in mid to late June.  Doc. No. 45-1, Depo. Tr. of Pltf. at Tr. p. 124.  Plaintiff inquired into whether Simonson had received any documentation regarding sedentary duty from Harenski, and learned that Simonson had not.  Deft. Stmt. of Mat. Facts at ¶ 74.  At the same time, Plaintiff admits that she did not personally submit any documentation or any written request regarding either continuous FMLA leave or sedentary duty prior to Port Authority prior to her conversation with Terry Schneider on June 23, 2008.  *Id.* at p. 134.

Upon returning from Las Vegas, Plaintiff failed to recertify her need for intermittent leave for her anxiety conditions by the previously extended deadline of July 10, 2008.  Deft. Stmt. of Mat. Facts at ¶ 85.  On July 11, 2008, Plaintiff was notified in writing that her previous approval for intermittent FMLA leave for her migraine headaches was rescinded.  Doc. No. 45-2 Pltf. Depo. Ex. 25.  On July 14, 2008, Harenski did complete the recertification documentation, which was received by the Port Authority on July 21, 2008.  Deft. Stmt. of Mat. Facts at ¶ 87; Schneider Depo. Ex. P-12.

Port Authority reviewed Harenski's recertification documentation, granted Plaintiff continuous FMLA leave for her anxiety conditions.  *Id*. at ¶ 89.  By letter dated July 22, 2208, Plaintiff was approved for continuous FMLA leave for the period of July 22, 2008, to August 12, 2008.  *Id*.  Plaintiff was also informed that as of August 12, she would exhaust her twelve weeks of FMLA entitlement for the twelve month period.  *Id*. at ¶ 90.  Upon the expiration of that time, Plaintiff was notified by letter dated August 13, 2008, that her continuous and intermittent

FMLA leaves were exhausted, and that she had no more FMLA time remaining for the twelve month period.  *Id*. at ¶ 92.  Following the sending of the letter on August 13, 2008, Terry Schneider did not hear from Plaintiff again.  *Id*. at ¶ 93.

That same day, on July 22, 2008, Plaintiff provided the letter from Harenski regarding sedentary duty to Monica Simonson.  *Id*. at ¶ 88.  The letter stated that "due to the duration of [Plaintiff's] work-related depression, anxiety, and panic attacks, it has become much harder to [Plaintiff] to function effectively at work.  I am recommending [Plaintiff] for sedentary duty to commence immediately."  *Id*.  Simonson forwarded the letter to Schneider.

Subsequently, Port Authority concluded that Plaintiff had improperly used her intermittent FMLA leave to extend a pre-planned vacation, and that she had improperly accepted holiday pay for the 3rd and 4th of July that she was not eligible to receive.  *Id*. at ¶ 94; *see also*, Doc. No. 45-6, Appendix at Tab 5, Arbitration decision regarding Plaintiff's grievance.  On October 17, 2008, Port Authority terminated Plaintiff's employment, citing those reasons as violations of the major rules of the Performance Code.  *Id*. at ¶ 95.  Plaintiff subsequently grieved the discharge, which was upheld by an arbitrator who found that Port Authority's reasons for the discharge constituted "just cause" under the CBA.  *Id*. at ¶ 96.

**Standard of Review**

**A.     Motion for Summary Judgment**

A court may grant summary judgment when "the pleadings, the discovery and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  A fact is "material" if its existence or non-existence would affect the outcome of the suit under

governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d

202 (1986).  An issue of fact is "genuine" when there is sufficient evidence from which a

reasonable jury could find in favor of the non-moving party regarding the existence of that fact.

*Id.* at 248-49.  "In considering the evidence, the court should draw all reasonable inferences

against the moving party." *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir.2007).

However, while the moving party bears the initial burden of showing the absence of a genuine

issue of material fact, the nonmoving party "may not rely merely on allegations or denials in its

own pleading; rather its response must-by affidavits or as otherwise provided in [Rule 56]-set out

specific facts showing a genuine issue for trial."  Fed.R.Civ.P. 56(e)(2).

**B.     FMLA**

Generally speaking, FMLA was enacted in 1993 to balance the demands of the employer's

workplace with the needs of families and to "entitle employees to take reasonable leave for

medical reasons." 29 U.S.C. §2601(b)(1–2);  *Sommer v. The Vanguard Group*, 461 F.3d 397,

398–99 (3d Cir.2006).  To that end, the Act was promulgated to accommodate "the important

societal interest in assisting families[ ] by establishing a minimum labor standard for leave."

*Churchill v. Star Enters.*, 183 F.3d 184, 192 (3d Cir.1999) (quoting S.Rep. No. 103-3 at 4, 1993

U.S.S.C.A.N. at 6-7).  To protect that interest, the FMLA contains two distinct provisions.

*Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir.2005).  First, it makes it "unlawful

for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any

right provided under" the FMLA. 29 U.S.C. § 2615(a)(1).  A claim arising under that provision is

known as an "interference" claim. *Callison*, 430 F.3d at 119.  Second, the FMLA makes it

"unlawful for any employer to discharge or in any other manner discriminate against any

individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2).  A

claim under that provision is referred to as a "retaliation" or a "discrimination" claim.  *Callison*,

430 F.3d at 119.

The two theories of recovery available under the FMLA require proof of different

elements.  To prove an interference claim, a plaintiff must show "[(1)] that he was entitled to

benefits under the FMLA and [(2)] that his employer illegitimately prevented him from obtaining

those benefits."  *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir.2007). To

prove a retaliation claim, a plaintiff must show that (1) he invoked his right to FMLA benefits,

(2) he suffered an adverse employment decision, and (3) the adverse decision was causally

related to his invocation of his rights.  *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d

Cir. 2009); *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir.2004).  Plaintiff

advances both theories in this case.  The Court will address each of Plaintiff's theories of

recovery *in seriatim*.

## Analysis

### A.  FMLA Interference claim

In order to recover under a theory of interference, Plaintiff's burden is to prove that she

was entitled to FMLA rights and that her employer failed to provide her with those entitlements.

*Callison*, 430 F.3d at 119–20 ("[a]n interference action is not about discrimination, it is only

about whether the employer provided the employee with the entitlements guaranteed by the

FMLA"). There is no dispute that Plaintiff has proven that she was entitled to avail herself of the

FMLA's unpaid leave provisions over the time period of July 3 -4, for both her migraine

headaches (final approval of which had been granted on June 27, 2008) and for her anxiety

15

conditions (which was under provisional approval pending the extension of the deadline for recertification).  There is also no dispute that Plaintiff invoked her FMLA leave on July 2, 2008, in order cover her regular work schedule for those two days.

However, Plaintiff has failed to submit evidence that demonstrates that Port Authority acted improperly.  No employee is entitled to a right, benefit, or position to which the employee would not have been entitled had she not taken FMLA leave.  29 U.S.C. § 2614(a)(3)(B).  The FMLA does not shield an employee from termination if the employee was allegedly involved in misconduct related to the invocation of the FMLA leave.  In fact, the Court of Appeals for the Third Circuit has made it clear that FMLA entitlements in no way prevent an employer from instituting policies to prevent the abuse of FMLA leave, so long as these policies do not conflict with or diminish the rights provided by the FMLA. *Callison*, 430 F.3d at 120–121.  In *Callison*, the Court of Appeals upheld an employer's policy requiring that: (1) employees absent on sick leave stay at home during working hours unless they leave home for a reason related to the cause of absence; (2) employees call the employer upon leaving and returning home; and (3) employees be subject to calls or visits by the employer. Id. at 118, 120–121.  In making this ruling the Court stated, "[T]here is no right in the FMLA to be 'left alone.'  Nothing in the FMLA prevents employers from ensuring that employees who are on leave from work do not abuse their leave ...". *Id.*

Here, Port Authority claims to have discharged Plaintiff for violating the Performance Code for improperly taking FMLA leave in order to cover her work schedule while over the course of a pre-planned trip to Las Vegas, and for collecting holiday pay without any legitimate basis for it.  The facts are undisputed that Plaintiff certainly committed the former violation, and,

16

as such, improperly received the benefit for the latter.  On July 3rd and 4th, 2008, Plaintiff had

been approved for intermittent FMLA leave for two conditions, migraine headaches and anxiety.

Plaintiff was also required to work on both of those days, but did not do so because she was in

Las Vegas visiting her brother.  The trip to Las Vegas was entirely personal in nature; it lasted

from June 28, 2008, to July 5, 2008; and it was planned in advance in and around early May.  On

July 2, 2008, Plaintiff called the Collier Garage to claim FMLA leave, not for that day, but for

July 3rd and 4th, the two days she was scheduled to work and for which she had made no other

cover arrangements.  Plaintiff's medical conditions justified intermittent leave because of their

unpredictable nature.  Plaintiff's own testimony explained the unpredictability of her conditions:

"Because there was no – you didn't know when you would get them.  It wasn't like you could

say, 'I'm going to need next Thursday off because I'm going to have a headache.'"  Dep. Tr. of

Pltf. at Tr. p. 52.  However, that is exactly what Plaintiff attempted to do on July 2.  Plaintiff's

invocation of FMLA on July 2 in order to obtain leave to cover her work shifts on July 3 and 4,

made while she was in Las Vegas on a pre-planned vacation that extended to July 5, especially

when considered through the filter of her own admission, and in the absence of any evidence to

the contrary, obliterates any prospect that the leave was for proper FMLA purposes, i.e., migraine

headaches or anxiety.  All evidence within the record points to fraudulent invocation of FMLA to

cover her vacation, and no evidence suggests otherwise.  The Performance Code and FMLA

policy of the Port Authority does not discourage or prevent Port Authority employees from taking

FMLA leave.  What those policies do require, however, is that employees not fraudulently obtain

FMLA leave, which is a perfectly acceptable requirement.  Plaintiff's attempt to cover her

absences over the two days she was scheduled to work violated those policies.

17

**B.**     **FMLA Retaliation claim**

To prove FMLA retaliation, an employee must demonstrate that she took FMLA leave, and suffered an adverse employment decision that was causally related to the exercise of FMLA rights. *Conoshenti*, 364 F.3d at 146. The *prima facie* elements and burden shifting framework in *McDonnell–Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1972) are applicable to analyze an FMLA retaliation case. *Conoshenti, id.* at 146–47; *see also Wilson v. Lemmington Home for the Aged*, 159 F.Supp.2d 186, 194 (W.D.Pa.2001)(applying Title VII framework to FMLA retaliation claims).

In *McDonnell Douglas*, the Supreme Court developed the burden-shifting framework for courts to utilize as a tool in analyzing retaliation claims. The *McDonnell Douglas* framework requires a plaintiff who alleges a violation of the FMLA to first establish a prima facie case of discrimination. The prima facie case, the elements of which depend upon the type of claim the plaintiff has alleged, "eliminates the most common nondiscriminatory reasons for the plaintiff's rejection." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 & n. 6, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In so doing, the prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Id.* at 254.

If the plaintiff successfully demonstrates a prima facie case of discrimination, the burden of production (but not the burden of persuasion) shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment decision. *Simpson v. Kay Jewelers*, 142 F.3d 639, 644 n. 5 (3d Cir.1998). The burden on the defendant at this junction is "relatively light," and the defendant can satisfy this burden "by introducing evidence which, taken as true,

18

would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.2d 759, 763 (3d Cir.1994) (emphasis added). Once a defendant offers a legitimate nondiscriminatory reason for the challenged conduct at issue, "the *McDonnell Douglas* framework-with its presumptions and burdens-disappear[s], and the sole remaining issue [i]s discrimination *vel non.*" *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The plaintiff, thus, has the ultimate burden of proving by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir.1999).

1.      Prima Facie Case

To establish a prima facie case for retaliation under the FMLA, a plaintiff must show that (1) she took an FMLA leave, (2) she suffered an adverse employment decision, and (3) the adverse decision was causally related to his leave. *Conoshenti*, 364 F.3d at 146. On this record, there is no dispute as to the first two elements of the prima facie case. The Court must consider the element of causation as it relates to Plaintiff's termination and her use of FMLA leave.

The United States Court of Appeals for the Third Circuit articulated two main factors that are relevant with respect to establishing a causal link to satisfy a prima facie case of retaliation: (1) timing or (2) evidence of ongoing antagonism. *Abramson v. Wm. Patterson College of N.J.*, 260 F.3d 265, 288 (3d Cir.2001) ("Temporal proximity ... is sufficient to establish the causal link. [A] plaintiff can [also] establish a link between his or her protected behavior and subsequent discharge if the employer engaged in a pattern of antagonism in the intervening period.") Here, of course, a consideration of those factors is not necessary, given the fact that

Plaintiff's use of FMLA leave was the action upon which her discharge was based.  Of course, Defendant Port Authority appropriately contends that it had a legitimate, nondiscriminatory reason for its action.  While that contention is well taken, and will be addressed *supra*, for the purpose of establishing a prima facie case, Plaintiff's use of her FMLA leave was the predicate basis for her discharge.  That fact is enough for the purpose of establishing an inference of discrimination on the part of Defendant.

2.       Burden Shift

While the manner in which the allegations arose was a circumstance that could give rise to an inference of discrimination, the Court finds that Defendant's basis for terminating the employment of Plaintiff, specifically for her fraudulent use of FMLA leave, is sufficient evidence of a legitimate non-discriminatory reason for the adverse action.  *See e.g., Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n. 2 (3d Cir.1997) (noting that the defendant's burden at this stage is relatively light and that it is satisfied if the defendant articulates a legitimate reason for the adverse employment action).  This satisfies defendant's "relatively light" burden to "introduc[e] evidence which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision."  *See Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir.2006) (citing *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir.1994)).

Once an employer has stated a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff, in order to survive summary judgment, must meet the two-prong test articulated by the United States Court of Appeals for the Third Circuit in *Fuentes*:

[T]he plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

20

*Id.* at 764.

A plaintiff must submit evidence that could cause a reasonable fact finder to discredit the employer's articulated reason for the adverse employment action in order to overcome summary judgment and bring her case to trial. To discredit the employer's articulated reason, a plaintiff does not need to produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons, *Sempier v. Johnson & Higgins*, 45 F.3d 724 (3d Cir.1995), nor produce additional evidence beyond her *prima facie* case. *Fuentes*, 32 F.3d at 764. However, a plaintiff must demonstrate such:

> "weaknesses, implausibilities, inconsistencies, incoherencies [sic], or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them 'unworthy of credence' " and hence infer that the proffered nondiscriminatory reason "did not actually motivate" the employer's action. [*Fuentes*, 32 F.3d] at 764-65 (quoting [*Ezold*, 983 F.2d at 531]).

*Simpson*, 142 F.3d 639, 644. The question asked in prong one of the *Fuentes* test is not whether the employer made the best, or even a sound, business decision; it is whether the real reason for the adverse result suffered by the plaintiff is discrimination. *Keller v. Orix Credit Alliance*, 130 F.3d 1101, 1109 (3d Cir.1997).

If the stated rationale to justify an employment decision is so implausible that a fact finder could not believe it to be worthy of credence, a plaintiff has established pretext. *See, e.g., Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 332 (3d Cir.1995)(holding that the employer's stated reason for plaintiff's termination, namely deficient sales performance, was contradictory to the evidence that plaintiff was the only sales employee to receive a bonus based upon performance three months prior to the termination). According to the Court of Appeals in *Brewer*, "[a] fact finder could find it implausible that Quaker State would have fired Brewer for

such deficiencies when he was successful in the sole area identified by Quaker State's own performance incentive program-sales." *Id.*

Here, Plaintiff has made no such showing.  More specifically, the record is uncontroverted that Plaintiff called the Collier Garage on July 2, in order to prospectively claim FMLA leave for July 3 and 4, despite the fact that Plaintiff's two medical conditions were of an unexpected nature and would occur without advance notice.  Further, at the time, Plaintiff was on a pre-planned out-of-state vacation visiting her brother, despite being scheduled to work on the Fourth of July holiday, and had made no other arrangements to have her work shift covered. From those facts, Port Authority determined that she did not suffer from her serious medical conditions over those two days, and that she improperly invoked FMLA leave in order to extend her vacation.  In response, Plaintiff does nothing to identify any evidence in the record to either contradict this evidence, or render it implausible.  To the contrary, Plaintiff assumes that because she was approved for intermittent FMLA leave, that she could use it whenever she wanted, wherever she happened to be.  To a point, that may be correct, but only on one condition that she conveniently overlooks, that is, that her use of leave on each occasion was to have been the result of a serious health condition that rendered her unable to perform one or more of the essential functions of her job.  There is no evidence in this record to support that notion.  To the contrary, the circumstantial evidence demonstrates the opposite.  In the face of this evidentiary record, Plaintiff has failed to present sufficient evidence to allow a fact finder to conclude reasonably that "a discriminatory reason more likely motivated the employer" than the employer's proffered explanation that plaintiff was terminated because she violated the Performance Code and FMLA policy of Port Authority.  *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089. Plaintiff did not succeed in

22

showing by evidence of record that the employer's proffered reason, that she violated company policy, "is unworthy of credence." *Id.* As such, Plaintiff cannot satisfy her burden of proving that defendant's reason was pretextual under the first prong of the *Fuentes* test.

The Court must next examine the second prong of the *Fuentes* framework to determine if Plaintiff presented sufficient evidence of pretext. To show that discrimination was more likely than not a cause for the employer's adverse actions, a plaintiff must point to evidence with sufficient probative force that could allow a fact finder to conclude by a preponderance of the evidence that the protected characteristic was a motivating or determinative factor in the employment decision. *Simpson*, 142 F.3d at 644-45. Relevant evidence that could be relied on in the evaluation of this prong includes: (1) whether the employer has previously discriminated against her, (2) whether Defendant has discriminated against other people within her protected class or within another protected class, or (3) whether Defendant has treated more favorably similarly situated persons not within the protected class. *Id.* at 645. Once again, Plaintiff points to no record evidence of previous discrimination against her. In fact, the evidence of the record reveals that throughout the recertification process, Port Authority gave significant weight to the opinions of Plaintiff's own health care providers, even in the face of the second opinions that conflicted in part with Plaintiff's medical providers. Further, there is no evidence in the record of other people within the protected class, or in another protected class, having been discriminated against.

In sum, Defendant has offered a legitimate, non-discriminatory reason for its decision to terminate the employment of Plaintiff, and Plaintiff has failed to carry either her burden of production or persuasion to render that explanation to be nothing more than pretext for

discrimination.

## **Conclusion**

For the hereinabove stated reasons, the Motion for Summary Judgment filed by

Defendant will be GRANTED.

An appropriate Order follows.


McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DAWN CREWL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | )   **2:10-cv-00567** |
| **v** | ) |
| | ) |
| **PORT AUTHORITY OF ALLEGHENY** | ) |
| **COUNTY, WILLIAM STEINMETZ, an** | ) |
| **individual, and ERIC WELLS, an individual,** | ) |
| | ) |
| **Defendants.** | ) |

## ORDER OF COURT

**AND NOW**, this 2nd day of December, 2011, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 44) is **GRANTED**.

It is **FURTHER ORDERED** that Plaintiffs' Amended Complaint (Doc. No. 18) is

dismissed with prejudice.

The Clerk shall docket this case closed.

BY THE COURT:

s/  Terrence F. McVerry
United States District Court Judge

cc:   Joseph V. Luvara, Esquire
      Email: joeluvara@joeluvaralaw.com

      Miranda E. Nickles, Esquire
      mnickles@eckertseamans.com

25